# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| PETER T. SZYMONIK and MONICA L. SZYMONIK,<br>    Plaintiffs,<br><br>v.<br><br>STATE OF CONNECTICUT, JORGE SIMON, LESLIE OLEAR, GEORGE JEPSEN, KEITH YAGALOFF, and GRANT MILLER<br>    Defendants. | No. 3:18-cv-263 (MPS) |

## MEMORANDUM OF DECISION

Plaintiffs Peter T. Szymonik and Monica L. Symonik ("the Szymoniks") bring this action against the State of Connecticut, three Connecticut state court judges, the Attorney General of Connecticut (collectively "the State Defendants"), and Attorney Keith Yagaloff, who represented Mr. Szymonik's ex-wife in their marriage dissolution proceeding. The Szymoniks allege that the state court judges violated their constitutional rights by requiring Peter Szymonik to obtain leave of the presiding judge before filing motions in family court, denying Peter Szymonik's request for leave to file a motion for assignment of counsel, and denying Monica Szymonik's motion to intervene in the marriage dissolution proceeding. They assert that the Attorney General violated their rights by declining to intervene in the family court case on behalf of Peter Szymonik. Finally, they allege that Attorney Yagaloff is liable because the leave-to-file procedures have not applied to him. The State Defendants move to dismiss for lack of subject matter jurisdiction and for insufficient service of process. (ECF No. 34.) Attorney Yagaloff moves to dismiss only for insufficient service of process. (ECF No. 33.) I find that the Court lacks subject matter jurisdiction to review these claims under the *Rooker-Feldman* doctrine. Further, the Eleventh Amendment bars suit against the State of Connecticut and the Attorney General in his official

capacity, the state court judges are entitled to absolute judicial immunity, the Attorney General is entitled to quasi-judicial immunity, and the complaint fails to state a claim against Attorney Keith Yagaloff. Accordingly, the motions to dismiss are GRANTED and the case is DISMISSED.

## I. Background

This case arises out of a marriage dissolution proceeding between Peter Szymonik and Stephanie Szymonik. Although the dissolution action was filed in 2006 and the marriage was dissolved in 2008, litigation between the former spouses has continued for the past ten years. (*See* State Court Docket, ECF No. 34-3.) On August 30, 2012, Judge John Carbonneau entered an order prohibiting either party in the post-dissolution proceedings from filing "any motions with the Court without the prior express written approval of the Presiding Judge." (the "Pre-Filing Injunction") (Filing Order, ECF No. 34-2 at 2.) The Szymoniks allege that no judge enforced the Pre-Filing Injunction until March of 2015. (Amended Compl., ECF No. 30 at 11; Plaintiffs' Response Brief, ECF No. 55 at 14.)

The Szymoniks assert that their requests for leave to file motions since March 2015 have been denied, including by judges other than the presiding judge. (Amended Compl., ECF No. 30 at 8.) In contrast, Attorney Yagaloff has been permitted to file motions without first requesting leave. (*Id.* at 9.) The Szymoniks allegedly contacted the Attorney General to request that his office intervene on their behalf in the family court proceeding. (*Id.* at 14–15.) The office refused their request. (*Id.*) Finally, the Szymoniks assert that the state court erroneously denied Monica Szymonik's motion to intervene in the marriage dissolution action. (*Id.* at 24.)

The Szymoniks allege that the Pre-Filing Injunction violates their right to petition the government under the First Amendment. They also allege that the Defendants' violated their

2

right to equal protection under the Fourteenth Amendment by treating them differently than similarly situated litigants in family court. They filed this action in federal court seeking the following relief: (1) a declaratory judgment that the Pre-Filing Injunction violated Mr. Szymonik's right to due process; (2) a declaratory judgment that the state court erred in refusing to allow Monica Szymonik to intervene in the proceeding; (3) "[a]n immediate prejudgment injunction" prohibiting the state court from enforcing the Pre-Filing Injunction; (4) "[a]n immediate prejudgment injunction ordering that Peter Szymonik be allowed to engage counsel of his choosing to represent him in matters before the state court"; and (5) attorney's fees. (*Id.*)

## II. Legal Standard

A "case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 94 (2d Cir. 2011). The "plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Luckkett v. Bure*, 290 F.3d 493, 497 (2d. Cir. 2002). "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). The court must construe the complaint liberally and accept all factual allegations as true. *Ford v. D.C. 37 Union Local 1549*, 579 F.3d 187, 188 (2d Cir. 2009).

When the defendants raise a challenge to the sufficiency of process, the plaintiff bears the burden of proving its adequacy. *See Mende v. Milestone Technology*, 269 F.Supp.2d 246, 251 (S.D.N.Y. 2003). A Rule 12(b)(5) motion to dismiss will be granted if the plaintiffs fail to serve a copy of the summons and complaint on a defendant pursuant to Rule 4 of the Federal Rules of Civil Procedure. *Rzayeva v. United States*, 492 F.Supp.2d 60, 74 (D.Conn.2007). Rule 4(m)

provides that, if service is not made upon a defendant within 90 days after the filing of the complaint, the court "shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time."

The Court must construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 472 (2d Cir. 2006). To plead a cognizable legal claim, however, a *pro se* plaintiff must meet the standard of facial plausibility. *See Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) ("[A] *pro se* complaint must state a plausible claim for relief.") (citing *Harris v. Mills*, 572 F.3d 66, 73 (2d Cir. 2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* at 678.

### III. Discussion

#### A. Insufficient Service of Process

The State Defendants and Attorney Yagaloff assert that the Szymoniks failed to effectuate service in accordance with Fed. R. Civ. P. 4. That rule provides

> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m). State officials may be served by (1) "delivering a copy of the summons and of the complaint to [the state's] chief executive officer; or (2) "serving a copy of each in the manner prescribed by that state's law for serving a summons or like process on such a

4

defendant." Fed. R. Civ. P. 4(j). Connecticut law provides that a state official may be served by delivering the summons and complaint in person to the Attorney General or sending those documents to the Attorney General by certified mail. Conn. Gen. Stat. § 52-64.

An individual defendant may be served (1) in accordance with the law of the state where the district court is located or where service is made; (2) by delivering the summons and complaint personally; (3) by leaving a copy of the summons and complaint at the individual's usual place of abode with someone of suitable age and discretion who resides there; or (4) by delivering a copy of each to the agent authorized by appointment or law to receive service. Fed. R. Civ. P. 4(e).

There is no evidence that the Szymoniks have obtained a summons from the Clerk. They have filed several documents that purport to demonstrate that service has been effectuated or waived. (*See* ECF Nos. 41, 42, 43, 46, 47, 48, 51, 52, 58.) None of these filings demonstrates that the defendants have actually received a summons in this case. Nevertheless, "Rule 4 of the Federal Rules is to be construed liberally to further the purpose of finding personal jurisdiction in cases in which the party has received actual notice." *Romandette v. Weetabix Co.*, 807 F.2d 309, 311 (2d Cir. 1986) (quotation marks omitted). The Second Circuit has explained that a case should not be dismissed for incomplete or improper service when "it appears that proper service may still be obtained." *Jaiyeola v. Carrier Corp.*, 73 F. App'x 492, 494 (2d Cir. 2003). All named defendants in this case have received notice of the suit and have had an opportunity to review and respond to the complaint. Because I conclude that this case must be dismissed on other grounds, though, I need not decide whether the complaint should be dismissed for improper service of process.

> **B. The Court Lacks Subject Matter Jurisdiction under the *Rooker-Feldman* Doctrine**

5

The Szymoniks ask the Court to review and overturn a series of adverse orders entered in Mr. Szymonik's family court case. The State Defendants argue that this Court lacks subject matter jurisdiction to consider their claims under the *Rooker-Feldman* doctrine. I agree. Congress has vested appellate jurisdiction over state court judgments exclusively with the United States Supreme Court. *See* 28 U.S.C. § 1257; *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291 (2005) ("[Section] 1257, as long interpreted, vests authority to review a state court's judgment solely in this Court . . . ."). Litigants seeking relief from a state court judgment may appeal within the state system and for a writ of certiorari to the U.S. Supreme Court. Federal district courts, however, lack subject matter jurisdiction to review state court decisions. More specifically, the *Rooker-Feldman* doctrine bars federal district court review of state court judgments when four conditions exist:

> First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must "complain[ ] of injuries caused by [a] state-court judgment [.]" Third, the plaintiff must "invit[e] district court review and rejection of [that] judgment[ ]." Fourth, the state-court judgment must have been "rendered before the district court proceedings commenced"— *i.e.*, Rooker–Feldman has no application to federal-court suits proceeding in parallel with ongoing state-court litigation.

*Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 84 (2d Cir. 2005) (alterations in original) (footnote omitted) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). "The first and fourth of these requirements may be loosely termed procedural; the second and third may be termed substantive." *Id.*

### i. Substantive *Rooker-Feldman* Requirements

I find that the amended complaint satisfies the substantive requirements of the *Rooker-Feldman* doctrine. The Szymoniks complain of injuries caused by three state court orders and invite this Court to "review and reject" those orders. First, they challenge the Pre-Filing

6

Injunction entered on August 30, 2012. (Amended Compl., ECF No. 30 at 6) ("This complaint relates to state family court judges imposing requests for leave against every motion filed by Peter Szymonik and his counsel since March 2015 without statutory authority.") They seek a declaratory judgment that the request-for-leave procedure is unconstitutional and request an injunction to prevent the state court from enforcing the Pre-Filing Injunction. (*Id.* at 24) (requesting "an immediate prejudgment injunction prohibiting the state family court from imposing request[s] for leave[] against motions filed by Peter Szymonik or his counsel."). Second, the Szymoniks seek a declaratory judgment that the state court erred by refusing to allow Monica Szymonik to intervene in the case. (*Id.* at 23.) Third, they argue that the state court improperly denied Peter Szymonik's request for leave to file a motion for assignment of counsel. Relatedly, they allege that the Pre-Filing Injunction has prevented Peter Szymonik from retaining counsel at all because it "caused [his] counsel to withdraw due [to] her inability to properly represent him" and he has been unable to engage successor counsel with the Pre-Filing Injunction in place. (ECF No. 30 at 7; *id.* at 21 ("Counsel agreed to represent Peter Szymonik on the condition that the state family court agreed not to impose request for leaves on his motions . . . .").) They seek an injunction compelling the state court to allow him to engage the counsel of his choosing. (*Id.* at 15–16.) In each instance, the Szymoniks allege injuries caused solely by state court orders and they ask this Court to hold that the orders were erroneous or unconstitutional. Their complaint thus satisfies the second and third requirements under *Hoblock*.

    ii.    **Procedural *Rooker-Feldman* Requirements**

This suit also meets the procedural requirements described in *Hoblock*. "*Rooker–Feldman* does not automatically bar every federal suit that seeks review and rejection of an injury-creating state decision." *Hoblock*, 422 F.3d at 89. Rather, it prohibits review of claims by

7

"state-court losers" complaining of judgments "rendered before the district court proceedings commenced" *Id.* at 84. For purposes of *Rooker-Feldman*, the first procedural prong is satisfied. Peter Szymonik was a party to the state-court proceedings and complains about the leave-to-file injunction imposed against him.[1] And Monica Szymonik tried to intervene in those proceedings but her motion was denied. She now seeks federal-court relief from the denial of her motion.[2]

As for the timing prong, the procedural posture of this case is unusual, but I find that it satisfies the requirement of a later-filed federal action. The Szymoniks challenge orders entered years after the final disposition of the underlying marriage dissolution proceeding. Although the orders do not represent the final disposition of the entire state court case, I find that they are "state court judgments" for purposes of *Rooker-Feldman*. First, the Pre-Filing Injunction was entered on August 30, 2012. (Filing Order, ECF No. 34-2 at 2.) Mr. Szymonik appealed that order to the Connecticut Appellate Court. (Amended Compl., ECF No. 30 at 18–19.) The

---

[1] The fact that the leave-to-file injunction was also allegedly imposed against his ex-wife does not change his status as a "state court loser." He is complaining about the adverse effects of the injunction on him and is thus sufficiently aggrieved to be a "state court loser," as the Appellate Court necessarily found in entertaining his appeal from the leave-to-file injunction. *See Szymonik v. Szymonik*, 182 Conn. App. 902 (2018). In Connecticut, litigants have standing to appeal only if their "interest[s have] been specially and injuriously affected by the [trial court's] decision." *Nanni v. Dino Corp.*, 117 Conn. App. 61, 70 (2009).

[2] In *Hoblock*, the Second Circuit stated that *Rooker-Feldman* applies only if "the parties in the state and federal suits [are] the same." 422 F.3d at 89. Courts have interpreted this language, however, "to require common identity between the plaintiff in the federal action and the party defeated in the state court action, not that a plaintiff may avoid *Rooker–Feldman* simply by adding new or different defendants in the federal action." *Bobrowsky v. Yonkers Courthouse*, 777 F. Supp. 2d 692, 706 n.17 (S.D.N.Y. 2011) (collecting cases). Thus, the fact that the Szymoniks have named the state court judges instead of Peter Szymonik's ex-wife does not defeat application of the doctrine. Nor does the fact that Monica Szymonik was not a party to the marital dissolution proceeding. She filed a motion to intervene, and thus participated, in that proceeding, and the denial of her motion makes her a "state court loser" for these purposes. This case is thus distinguishable from *Lance v. Dennis*, 126 S. Ct. 1198 (2006), in which the Supreme Court held that citizens who did not participate in earlier state court redistricting litigation brought by the state attorney general were not subject to dismissal on *Rooker–Feldman* grounds.

Connecticut Appellate court affirmed. *Szymonik v. Szymonik*, 182 Conn. App. 902 (2018). The Connecticut Supreme Court denied his petition for certification to appeal from the Appellate Court's decision. *Szymonik v. Szymonik*, 330 Conn. 924 (2018). In short, the Pre-Filing Injunction was adverse to Mr. Szymonik and he has had an opportunity to challenge the injunction through the state court system. This Court lacks jurisdiction to consider further appeals from that order. *See also Booker v. Supreme Court of S.C.*, No. 2:16-CV-58-MGL-MGB, 2016 WL 4394183, at *6 (D.S.C. Mar. 7, 2016), *report and recommendation adopted in part and rejected in part on other grounds*, No. CV 2:16-58-MGL, 2016 WL 4269537 (D.S.C. Aug. 15, 2016), *aff'd*, 675 F. App'x 373 (4th Cir. 2017) ("Thus, to the extent Plaintiff seeks federal court review of any state court decisions (*i.e.* he wants the state Pre-Filing Injunction lifted and wants his repetitive PCR application reinstated), the *Rooker–Feldman* doctrine would bar such review here.").

Second, Monica Szymonik's motion to intervene was denied on November 7, 2017. (Order Denying Motion to Intervene, ECF No. 34-4 at 6.) The Connecticut Supreme Court has held that an order denying a motion to intervene is an appealable final judgment if the movant "can make a colorable claim to intervention as a matter of right." *In re Santiago G.*, 325 Conn. 221, 231 (2017).[3] There is no evidence in this case that Monica Szymonik attempted to appeal from the denial of her motion. But she cannot confer subject matter jurisdiction on this court simply by declining to avail herself of the opportunity for further review in the state court system. *See Bartolini v. Mongelli*, No. 17-CV-06276-PKC-SJB, 2018 WL 6338771, at *3

---

[3] Of course, to the extent that Ms. Szymonik lacked a "colorable claim to intervention as a matter of right," her claim here would fail on the merits. The Szymoniks point to no federal right that would be violated by a state court order denying a motion to intervene by someone who has no colorable claim to an entitlement to intervene.

9

(E.D.N.Y. Dec. 4, 2018) (holding that *Rooker-Feldman* barred review of a state court order denying the federal court plaintiff's motion to intervene in part because the state court order was appealable within the state system: "Plaintiff meaningfully participated in the state court proceeding, even though never formally recognized as a party to the proceedings. Accordingly, Plaintiff became a state-court loser when Surrogate Kelly held that he had no standing to press his interest in the state probate proceedings.").

Finally, Mr. Szymonik's request for leave to file a motion for assignment of counsel was denied on July 24, 2018—before the amended complaint was filed. (Order on Request, ECF No. 30-1 at 133.) The Szymoniks assert that the decision "denie[d] Peter Szymonik his due process right to proper legal representation." (Amended Compl, ECF No. 30 at 16.) They also assert that the Pre-Filing Injunction itself caused Peter Szymonik's counsel to withdraw and has prevented him from obtaining replacement counsel. (*See* ECF No. 30 at 7, 21) ("Counsel agreed to represent Peter Szymonik on the condition that the state family court agreed not to impose request for leaves on his motions . . . .")). Either claim meets the procedural requirements under *Rooker-Feldman*. To the extent that Peter Szymonik's inability to obtain counsel was caused by the Pre-Filing Injunction, the claim satisfies the procedural requirements for the reasons explained in the discussion of that order above. If the state court's refusal to grant leave to file the motion for assignment of counsel caused an independent injury, it was appealable to the same extent as if the court had considered and denied the motion on its merits. *Ahneman v. Ahneman*, 243 Conn. 471, 480, 706 A.2d 960, 964 (1998) ("[T]he refusal to consider a motion is more deserving of appellate review than a formal denial, because the defendant not only has been denied relief; she has been denied the opportunity even to persuade the trial court that she is entitled to that relief.") As noted,

the Szymoniks' failure to take advantage of the opportunity to appeal at the state level does not preclude the application of *Rooker-Feldman*.

### C. Dismissal Would Be Required Even if *Rooker-Feldman* Did Not Apply

Even if *Rooker-Feldman* did not apply, I would still dismiss the complaint because (1) the Eleventh Amendment bars suit against the State and the Attorney General; (2) the State Defendants are entitled to absolute immunity; and (3) the complaint fails to state a claim against Attorney Yagaloff.[4]

#### i. The Claims Against the State of Connecticut and State Attorney General Are Barred by the Eleventh Amendment

The Eleventh Amendment prohibits suits against a state absent the state's consent. *See Alabama v. Pugh*, 438 U.S. 781, 781–782 (1978). This sovereign immunity extends to state administrative agencies, *id.*, and state officials acting in their official capacities. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) ("We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983."). Regardless of the relief sought, the claims against the State of Connecticut must therefore be dismissed. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984) ("It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant

---

[4] Federal district court review of the Szymonk's claims is likely also barred under the *Younger* abstention doctrine. *See Falco v. Justices of the Matrimonial Parts of Supreme Court of Suffolk Cty.*, 805 F.3d 425, 427 (2d Cir. 2015) ("[D]istrict courts should abstain from exercising jurisdiction only in three exceptional circumstances involving (1) ongoing state criminal prosecutions, (2) certain civil enforcement proceedings, and (3) civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions. . . . Falco's federal lawsuit implicates the way that New York courts manage their own divorce and custody proceedings—a subject in which the states have an especially strong interest.") (internal quotation marks omitted).

is proscribed by the Eleventh Amendment. . . . This jurisdictional bar applies regardless of the nature of the relief sought.")[5]

The Supreme Court has recognized a limited exception to Eleventh Amendment immunity for suits against state officials in their official capacities seeking only prospective relief. Under *Ex parte Young*, 209 U.S. 123 (1908) and its progeny, "sovereign immunity [does] not bar actions seeking only prospective injunctive relief against state officials to prevent a continuing violation of federal law because a state does not have the power to shield its officials by granting them 'immunity from responsibility to the supreme authority of the United States.'" *In re Dairy Mart Convenience Stores, Inc.,* 411 F.3d 367, 371 (2d Cir. 2005) (quoting *Ex parte Young*, 209 U.S. at 160). This exception applies only when the state official against whom suit is brought has "some connection with the enforcement of the act that is in continued violation of federal law." *Id.* at 372–73 (quotation marks omitted).

The claims against the Connecticut Attorney General fall outside of the exception in *Ex parte Young*. The Szymoniks allege that three state court orders violated their constitutional rights. They do not allege that the Attorney General took any action to seek or enforce the court orders that caused their injuries. Nor do they allege that the Attorney General had any duty, based on federal law, to intervene on their behalf or that, had he intervened, the state courts would not have issued the orders that caused their injuries.[6] Because the Attorney General has no

---

[5] The Szymoniks seek only declaratory and injunctive relief. To the extent that their complaint could be construed to seek retrospective relief or damages against any state official acting in his or her official capacity, however, it must also be dismissed. *Will*, 491 U.S. at 71.

[6] Indeed, because the Szymoniks do not allege that the Attorney General had a specific duty to intervene or that his intervention would have prevented their injuries, it is unclear that the Szymoniks would have standing to bring their claim even if they could overcome the Eleventh Amendment. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) ("[I]t must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.") (quotation marks omitted).

"connection with the enforcement of the act that is [allegedly] in continued violation of federal law," *In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d at 372–73, the Szymoniks claims against the Attorney General are barred under the Eleventh Amendment.

### ii. The State Court Judges Are Entitled to Absolute Judicial Immunity

The Szymoniks claims against the state court judges must be dismissed under the doctrine of judicial immunity. "A judge is absolutely immune for all claims for damages relating to actions taken in his judicial capacity, whether sued in his individual or official capacity." *LeDuc v. Tilley*, No. 3:05CV157MRK, 2005 WL 1475334, at *6 (D. Conn. June 22, 2005). Further, injunctive relief is unavailable "in any action brought [under § 1983] against a judicial officer for an act or omission taken in such officer's judicial capacity . . . unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983. "Declaratory relief against a judge for actions taken within his or her judicial capacity is ordinarily available by appealing the judge's order." *LeDuc*, 2005 WL 1475334, at *7. "Judicial immunity may be overcome only if (1) the actions alleged were 'not taken in the judge's judicial capacity,' or (2) if the 'actions, though judicial in nature, [were] taken in the complete absence of all jurisdiction.'" *Collins v. W. Hartford Police Dep't*, 380 F. Supp. 2d 83, 90 (D. Conn. 2005), *aff'd on other grounds*, 324 F. App'x 137 (2d Cir. 2009) (quoting *Mireles v. Waco*, 502 U.S. 9, 11–12 (1991)).

The Szymoniks do not allege that the judges violated a declaratory decree, and they have failed to show that declaratory relief was unavailable. First, Peter Szymonik appealed the Pre-Filing Injunction and the Appellate Court upheld the order. Second, as discussed above, Monica Szymonik could have appealed from the denial of her motion to intervene, though she chose not do so. Third, although the Szymoniks contend that declaratory relief was not available from denial of the request for leave to file a motion for assignment of counsel, the trial court's refusal

13

to consider that motion was appealable to the same extent as a denial of the motion itself. *Ahneman*, 243 Conn. at 480. Declaratory relief from that refusal was also available through Peter Szymonik's appeal of the Pre-Filing Injunction. As a result, the Szymoniks' request for injunctive relief against the state court judges is barred under § 1983.

The Szymoniks argue that the state court judges were acting in an administrative capacity when they enforced the Pre-Filing Injunction and thus are not entitled to absolute judicial immunity. I disagree. It is true that judges do not enjoy absolute immunity for "administrative, legislative, or executive act[s]." *Huminsky v. Corsones*, 396 F.3d 53, 75 (2d Cir. 2005). But the conduct alleged in the complaint was plainly "judicial in nature," *id.*, and the judges did not act "in the complete absence of all jurisdiction." *Mireles*, 502 U.S. at 12. The Szymoniks allege that the state court judges are liable because they refused Mr. Szymonik's request to file motions and denied Monica Szymonik's motion to intervene. "A court's control of its docket is . . . a judicial act because it is part of a court's function of resolving disputes between parties." *Id.* (internal quotation marks and alteration omitted). The judges are plainly entitled to absolute judicial immunity for the conduct alleged in the amended complaint.

### iii. The Attorney General is Entitled to Absolute Quasi-Judicial Immunity

The claims against the Connecticut Attorney General in his individual capacity must also be dismissed because he is entitled to absolute quasi-judicial immunity for the conduct alleged in the complaint. "[A]bsolute immunity has been extended to individuals performing duties 'closely associated with the judicial process.'" *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994).[7] Thus, the

---

[7] The Second Circuit has recognized six factors that are "characteristic of the judicial process":
> (a) the need to assure that the individual can perform his functions without harassment or intimidation; (b) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (c)

Second Circuit has "consistently afforded absolute immunity to a government attorney's decision whether or not to initiate litigation on behalf of the state." *Mangiafico v. Blumenthal*, 471 F.3d 391, 396 (2d Cir. 2006). Government attorneys are also absolutely immune from liability for their decisions to initiate administrative proceedings and for refusing to represent a state employee in civil litigation. *Id.* Here, the Szymoniks' allege that the Attorney General refused to intervene in the marriage dissolution proceeding. (Amended Compl., ECF No. 30 at 13–15.) I conclude without difficulty that the Attorney General is absolutely immune from suits arising out of his discretionary decision not to intervene on behalf of a party in a family court proceeding.

### iv. The Amended Complaint Fails to State a Claim Against Attorney Yagaloff

Finally, the complaint fails to state any claim for relief against Attorney Yagaloff. The Szymoniks bring this action under 42 U.S.C. § 1983. "To state a claim under section 1983, the defendant must be a state actor." *Carmon v. Silverstein*, No. 3:05CV877(WWE), 2005 WL 1983256, at *1 (D. Conn. Aug. 16, 2005). "It is well established that private attorneys-even if the attorney was court appointed-are not state actors for the purposes of § 1983 claims." *Licari v. Voog*, 374 F. App'x 230, 231 (2d Cir. 2010). The complaint alleges, without elaboration, that Attorney Yagaloff acted as "an officer, agent and proxy of the court." (Amended Compl., ECF No. 30 at 14.) It also asserts that Attorney Yagaloff conspired with state officials to hold hearings without notifying Peter Szymonik, but it pleads no facts to support that assertion and such conclusory allegations are not entitled to a presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Further, the Szymoniks do not appear to seek any relief from Attorney Yagaloff, and

---

insulation from political influence; (d) the importance of precedent; (e) the adversary nature of the process; and (f) the correctability of the error on appeal.

*Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994) (quotation marks and citations omitted).

the constitutional claims they assert do not challenge any action by him. The complaint thus fails to state a claim against Attorney Yagaloff and it must be dismissed.

## IV. Conclusion

To summarize (1) this Court lacks jurisdiction to review state court judgments under the *Rooker-Feldman* doctrine; (2) the claims against the State of Connecticut and the State's Attorney General are barred by the Eleventh amendment; (3) the claims against the state court judges fail because the judges are entitled to absolute judicial immunity; (4) the claims against the Connecticut Attorney General fail because he is entitled to quasi-judicial immunity; and (5) the amended complaint fails to state a claim for relief against Attorney Yagaloff. For those reasons, the case is DISMISSED. The Clerk is directed to close this case.

IT IS SO ORDERED.

    /s/
Michael P. Shea, U.S.D.J.

Dated:    Hartford, Connecticut
           January 15, 2019